**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| IN RE: DEPUY ORTHOPAEDICS, INC. PINNACLE HIP IMPLANT PRODUCT LIABILITY LITIGATION | MDL No. 2244<br>Honorable Ed Kinkeade |
| *This Document Relates To:*<br>*All Cases* | |

## PLAINTIFFS' EXECUTIVE COMMITTEE'S BRIEF IN SUPPORT OF MOTION TO COMPEL THE DEPOSITION OF CHARLES ANDERSON ENGH, JR., M.D. AND TO STRIKE DEFENDANTS' NOTICE OF DEPOSITION

The Plaintiffs' Executive Committee ("PEC"), on behalf of the Plaintiffs' Steering Committee ("PSC"), respectfully moves this Court, pursuant to Fed. R. Civ. P. 37, for an order (1) compelling Defendants to produce Charles Anderson Engh, Jr., M.D. for a deposition of seven hours on a date agreeable to all parties; and (2) striking Defendants' August 27, 2013 Notice of Deposition concerning Dr. Engh, Jr.

Dr. Engh Jr. is one of the design surgeons who worked with DePuy and was paid millions of dollars to develop and promote the Pinnacle metal-on-metal hip implant. The PEC requested his deposition, and the Defendants unilaterally scheduled it in Washington, D.C. on the day after the deposition of Dr. Thomas Schmalzried in Los Angeles – another design surgeon who worked with DePuy on developing and promoting the Pinnacle metal-on-metal and ASR hip implants. Moreover, the Defendants have stated they will limit the PEC to five hours of questioning for Dr. Engh Jr., which is plainly inadequate.

Defendants' notice, moreover, is in apparent disregard of the Case Management Orders in this proceeding, which do not authorize Defendants to notice depositions at this point in the case. This Court should require Defendants to provide Dr. Engh, Jr. for a full seven hour deposition on a date mutually agreeable to all parties, strike

1

Defendants' improper notice, and prohibit Defendants from going forward with their unilateral deposition on September 13, 2013.

In support of this motion, the PEC states as follows:

### Background

1. Doctors at the Anderson Orthopaedic Clinic ("AOC") and the Anderson Orthopaedic Research Institute ("AORI") in Arlington, Virginia, have maintained consulting and design relationships with DePuy for decades. Charles Anderson Engh, Sr. ("Dr. Engh, Sr."), an orthopedic surgeon who is one of the sons of the founder of AORI and AOC, played a significant role in designing the Pinnacle hip system for DePuy. Charles Anderson Engh, Jr. ("Dr. Engh, Jr."), is also an orthopedic surgeon and also a DePuy design surgeon; Dr. Engh, Jr. was involved in the design of the Ultamet liner, the metal liner that, when used with the Pinnacle cup and a metal femoral head, results in a metal-on-metal bearing surface.[1] A third member of the family, Dr. Gerard Engh, the brother of Dr. Engh, Sr., and the uncle of Dr. Engh, Jr., is also an orthopedic surgeon with AOC and is also involved in the work of AORI. The PEC requested depositions of both Dr. Engh Sr. and Dr. Engh Jr. because both doctors were involved in the development of the Pinnacle metal-on-metal hip implant, but defense counsel represented that Dr. Engh Sr. had suffered a stroke and was medically incapacitated.

2. The Defendants originally offered August 16, 2013 for Dr. Engh, Jr.'s deposition, but, on August 3, 2013, the PEC notified DePuy's counsel that date would not work due to multiple scheduling conflicts in this same case, and requested that Defendants provide another date. *See* Exhibit A.[2] On August 19, 2013, defense counsel

---

[1] Dr. Engh, Sr. is sometimes referred to as "Charles Engh"; Dr. Engh, Jr. is sometimes referred to as "Andy Engh."

[2] Exhibit A is an email string between counsel on the subject of the deposition of Dr. Engh, Jr. and other witnesses.

responded that Dr. Engh, Jr. would be made available for deposition in Washington, D.C. on September 13, 2013. *Id.* Defendants had previously scheduled the deposition of another Pinnacle design surgeon, Dr. Thomas Schmalzried, for September 12, 2013, in Los Angeles. Schmalzried and Engh Jr. were both "design surgeons" for the Ultamet metal liner and helped develop and promote the use of metal-on-metal hip implants in general and the Pinnacle metal-on-metal hip implant in particular. For this reason, the PEC planned to have the same lawyer or lawyers take the Schmalzreid and Engh, Jr. depositions, which would not be possible if the two were scheduled on consecutive days on opposite coasts. Accordingly, Plaintiffs requested a different date for the Engh, Jr. deposition and explained their objections to Defendants. *Id.*

3. Defendants refused to provide an alternate date for Dr. Engh, Jr. Instead, they served their own notice for Dr. Engh, Jr.'s deposition, setting the deposition for September 13, 2013 in Washington, D.C. *See* Exhibit B; *see also* Exhibit A. At the same time, they announced that they would allow Plaintiffs five hours of questioning at "their" deposition of Dr. Engh, Jr. *See* Exhibit A. (Defendants acknowledged that, if the Court permits Plaintiffs to examine Dr. Engh, Jr. for more than five hours, they will be able to schedule two consecutive days. *Id.*) No subpoena was issued for the Dr. Engh, Jr. deposition, the notice (and, presumably a request from DePuy's counsel) apparently being sufficient to persuade Dr. Engh, Jr. to appear without resort to formal process.

### Dr. Engh, Jr.'s Deposition Should Be Scheduled to Permit Plaintiffs to Examine the Witness for Seven Hours

4. Rule 30 of the Federal Rules of Civil Procedure provides for a presumptive deposition length of seven hours. As set forth in the Special Master's Report Relating to Deposition Protocol ("Deposition Protocol"), the parties agreed (and the Special Master adopted as his recommendation) that depositions would be "limited to one day which begins at 9 a.m. and concludes at 6 p.m. local time," s*ee* Docket #246 at ¶ 4, a day of sufficient length to allow seven hours of questioning by Plaintiffs. Nothing in the

Deposition Protocol suggests that Defendants may arbitrarily limit the length of a deposition. Plaintiffs are entitled to examine Dr. Engh, Jr., a DePuy witness whose deposition the PSC requested, for the full seven hours.

5. Dr. Engh, Jr. is a witness whose extensive involvement with the design of DePuy's metal-on-metal Pinnacle hip implant will require substantial time to explore. Documents produced by Defendants show that Dr. Engh, Jr. was part of the design team convened by DePuy in 1995 to explore the design of "alternate bearings" for artificial hips.[3] Dr. Engh, Jr. was part of that team from the very beginning, and attended its very first meeting. The alternate bearing that ultimately emerged from that team was the metal-on-metal bearing created by the use of a Pinnacle acetabular cup with an Ultamet metal liner. Plaintiffs believe that Dr. Engh, Jr. worked with DePuy on the design of the Ultamet throughout the life of that project. Thus, Dr. Engh, Jr. has knowledge of the entire history of the design process for the Pinnacle metal-on-metal hip.

6. Dr. Engh, Jr. also has institutional knowledge about the role of AORI and AOC in developing and testing the original Pinnacle cup, as well as the Ultamet liner. Dr. Engh, Sr. was involved in the initial design of the Pinnacle cup in the early 1990's, but, according to DePuy, is unable to testify. Thus, Plaintiffs will need to examine Dr. Engh, Jr. on AORI's role in the earlier design project as well.

7. Documents produced by Defendants shows that DePuy paid Dr. Engh, Sr. and Dr. Engh, Jr. tens of millions of dollars in royalties for their work on DePuy

---

[3] Documents produced by DePuy that reference Dr. Engh, Sr. and Dr. Engh, Jr., have been marked confidential, as has the testimony of the design surgeons whose depositions Plaintiffs have already taken. For that reason, Plaintiffs have not attached these documents or transcripts to this motion. Should the Court wish to review any of this material, Plaintiffs will provide copies *in camera* for the Court.

4

products, including the Pinnacle and Ultamet designs. Plaintiffs are entitled to ask Dr. Engh, Jr. about the no doubt substantial work that led to payments of that size.

8. In addition, both Dr. Enghs published articles reporting on studies of artificial hips. Plaintiffs believe that DePuy relied on and otherwise made use of this research, which is, accordingly, another area on which Plaintiffs intend to question Dr. Engh, Jr. In particular, Dr. Engh, Jr. was the lead author of articles (1) reporting an extremely low rate of soft tissue reactions requiring revision with the use of Pinnacle metal-on-metal hips; and (2) reporting lower blood levels of cobalt and chromium with Pinnacle metal-on-metal hips than with other metal-on-metal bearings. These articles were relied on and circulated by DePuy in response to a 2010 medical alert about metal-on-metal hips from the Medicines and Healthcare Products Regulatory Agency in the United Kingdom.

9. Moreover, in February, 2011, both Dr. Enghs participated, along with two other doctors from AOC, in a presentation at a conference of the American Academy of Orthopaedic Surgeons ("AAOS"), entitled "Pathologically Confirmed Metal-on-Metal THA Adverse Local Tissue Reactions from One Center." A description from the AAOS meeting shows that the presentation reported on 13 cases with pathologically confirmed local tissue reactions to metal-on-metal total hip arthroplasties (THAs) that have undergone revision. Plaintiffs are entitled to question Dr. Engh, Jr. about this presentation and the cases underlying it.

10. Because of the variety of topics on which Dr. Engh, Jr. has knowledge, covering both his work as a design surgeon for DePuy, the details of his consulting arrangements, the involvement of AOC and AORI in earlier design work carried our primarily by Dr. Engh, Sr., as well as publications and presentations concerning metal-on-metal hips, a full seven hour day of deposition is warranted and necessary to fully explore these topics.

11. Defendants claim that five hours of examination by Plaintiffs will be sufficient, *see* Exhibit A, but have no basis for this limitation. Indeed, Defendants concede that Dr. Engh, Jr. can be made available for a two-day deposition if the Court permits the PEC to examine him for more than five hours, so Dr. Engh, Jr.'s schedule is plainly not the limiting factor. *Id.* Defendants rely on Plaintiffs' agreement to limit to five hours each their examinations of two other design surgeons, Dr. William Griffin and Dr. Thomas Fehring, *see* Exhibits C, D, but circumstances applicable to those two witnesses only, made that limitation practical there, but not here. Neither Dr. Griffin nor Dr. Fehring was involved in the design of the Ultamet metal liner; both doctors were involved only in the design of the Pinnacle acetabular cup. Because the metal-on-metal bearing is the primary focus of these cases, Dr. Griffin and Dr. Fehring's more limited involvement made that allocation possible. Moreover, neither Dr. Griffin nor Dr. Fehring had the kind of institutional knowledge and involvement of Dr. Engh, Jr., and neither was substituting for another witness with respect to that knowledge, as Dr. Engh, Jr. will be with respect to his father. Indeed, it was because of these particular circumstances surrounding the Griffin and Fehring depositions, that, in consenting to limit their examination to five hours, Plaintiffs specifically noted the proposed allocation of time "should work fine *for Griffin and Fehring*." *See* Exhibit D (emphasis added). At no time did Plaintiffs ever suggest they would agree to a similar limitation with respect to other witnesses.

12. By contrast, Plaintiffs' examination of Dr. Brian Haas consumed a full seven hour day, even though Dr. Haas did not have nearly the involvement of the Engh family in the development of artificial joints for DePuy, nor has Dr. Haas published extensively about metal-on-metal hip implants, as has Dr. Engh Jr. Dr. Haas's deposition provides a better guide for the time needed to examine Dr. Engh, Jr., than do the depositions of Drs. Griffin and Fehring.

13.     Moreover, although Defendants now claim that they require at least two hours to examine Dr. Engh, Jr., and can spare Plaintiffs only five hours, that was not always their position.  In July, 2013, before this dispute arose, in discussing scheduling of all the design surgeon depositions, including, specifically, Dr. Engh, Jr., defense counsel wrote: "[W]e will not need more than about one hour for our questioning of these witnesses."  *See* Exhibit E.  Defendants have never explained why they now need more time, or why, assuming they do, that extra time should be subtracted from Plaintiffs' time to question the witness.

14.     For these reasons, Defendants should be compelled to produce Dr. Engh, Jr. for a seven hour deposition by the PEC.

### Defendants Should Be Prohibited from Proceeding with Their Unilateral and Improperly-Noticed Deposition and Instead Required to Produce Dr. Engh, Jr. on a Date Mutually Agreeable to the Parties

15.     In an attempt to force the PEC to take Dr. Engh, Jr.'s deposition on an inconvenient date, Defendants served their own notice of his deposition.  Defendants' notice violates this Court's Case Management Order No. 5 governing discovery in this case.  That order provides:

> This Order is intended to apply to discovery that is generally applicable to the cases in this MDL proceeding and all such discovery shall be governed by this Order.  *All discovery is stayed, including all case specific discovery, except that permitted by this Order.*

Docket #151 at 3 (emphasis added).  With respect to depositions, CMO No. 5 goes on to provide:  "The PSC may serve notices of depositions on any defendant and third parties and may supplement the requests as reasonable without further order of the Court in accordance with a schedule that should be negotiated by the parties."  *Id.* at 6.  No

provision of CMO No. 5 – or any other order of this Court of which Plaintiffs are aware – permits Defendants to notice depositions at this point in the case.[4]

16. Rather, CMO No. 5 provides that separate orders will be entered with respect to case-specific discovery in individual cases when those cases are selected for further work-up. *See* Docket #151 at 4. Even though no such separate order has been entered, Defendants have served notices for the depositions of the eight plaintiffs who are being considered for bellwether selection, and also their revising surgeons, all of which have been done by consent of the PEC and Defendants. In addition, Case Management Order No. 8 provides for expert discovery to be provided by both parties. Plainly, the case management orders envision that Defendants will take depositions at a later point in the case. Defendants' Notice of Deposition with respect to Dr. Engh, Jr. should be stricken as improper because this Court's orders do not permit Defendants to notice their own depositions of liability or expert witnesses at this stage of the case.

17. Moreover, even if Defendants were permitted to notice depositions, they should not be permitted to use a Notice of Deposition to force Plaintiffs to take a deposition at an inconvenient time. Defendants insist that the only date that Dr. Engh, Jr. can be available for deposition is September 13, 2013, the day after the deposition of Dr. Thomas Schmalzried, which is scheduled to take place in Los Angeles. Like Dr. Engh, Jr. (and Dr. Engh, Sr.), Dr. Schmalzried is a design surgeon who was paid many millions of dollars for his work with DePuy. Like Dr. Engh, Jr., Dr. Schmalzried was a consultant on the Ultamet design and, like Dr. Engh, Sr., he was a consultant on the Pinnacle design as well. The topics on which Dr. Engh, Jr. and Dr. Schmalzried will be

---

[4] The Deposition Protocol recognized that Defendants would cross-notice depositions in the state court cases. *See* Docket #246 at ¶ 1. But such cross-notices are served in the state court cases, not in this MDL, and pertain only to depositions already noticed by the PSC. Nothing in the Deposition Protocol purports to permit Defendants to notice its own depositions in the MDL.

examined will, in all likelihood, substantially overlap, so that it makes sense for the same Plaintiffs' lawyers to prepare for and be present at both depositions. The schedule proposed by DePuy makes this type of efficiency and continuity impossible.

18.     Defendants claim that Dr. Engh, Jr. is a "third party witness," and suggest that they have limited ability to affect the scheduling of the deposition. This is nonsense.

19.     As already noted, Dr. Engh, Jr., his family, and the institutions they are associated with have maintained close relationships with DePuy for decades and were paid many millions of dollars by DePuy. Plaintiffs believe that Dr. Engh, Jr. currently has a consulting agreement with DePuy and is under contract with the company.

20.     Each of the other design surgeons Plaintiffs have deposed[5] has been represented by DePuy's counsel at the deposition; Plaintiffs understand and expect that DePuy's counsel will represent Dr. Engh, Jr. at his deposition as well. (If defense counsel were not also representing Dr. Engh, Jr., the PEC could contact Dr. Engh, Jr. or his separate counsel to arrange convenient dates for deposition. This avenue is foreclosed to the extent that Defendants' lawyers also represent Dr. Engh, Jr.) Defendants' counsel has asserted claims of attorney-client privilege with respect to communications with design surgeons, and indeed, recently requested that Plaintiffs agree that communications with these witnesses need not be included on Defendants' privilege logs.

21.     Moreover, defense counsel apparently enjoys a sufficiently close relationship with Dr. Engh, Jr., that no subpoena is necessary for this deposition; rather, Defendants have undertaken to provide the witness voluntarily (and to speak for him with respect to scheduling). Thus, it appears that Defendants do not need to notice Dr.

---

[5] Dr. Schmalzried, who has not yet been deposed, but has been personally sued in hundreds of Pinnacle and ASR cases, has his own counsel.

Engh, Jr.'s deposition to find out what he has to say; their lawyers can speak freely to him in what they assert are privileged conversations. Clearly, Dr. Engh, Jr. is not a stranger with whom Defendants must deal at arms' length.

22. Nor is there any compelling need for Defendants to preserve Dr. Engh, Jr.'s testimony at this time. Dr. Engh, Jr. is a young man (the AOC website reports that Dr. Engh, Jr. graduated from medical school in 1985; his CV available on that website shows that he was born in 1959) and there has been no suggestion that he is in poor health.[6] Moreover, the first bellwether trial in this MDL is not scheduled for more than a year. It is inconceivable that there is no mutually agreeable date in the next six to nine months that Dr. Engh, Jr. could appear for a deposition of seven hours of examination by Plaintiffs' counsel. There is simply no legitimate basis for Defendants to force Plaintiffs to take the depositions of two important design surgeons on opposite coasts on consecutive days two weeks hence. This Court should strike Defendants' Notice of Deposition and prohibit Defendants from going forward with a deposition clearly designed to obstruct, rather than facilitate, genuine discovery.

**Conclusion**

23. As explained above, this Court should compel Defendants to produce Dr. Engh, Jr., for seven hours of examination at a time mutually convenient for all parties, strike Defendants' improper Notice of Deposition, and prohibit Defendants from proceeding with Dr. Engh, Jr.'s deposition on September 13, 2013.

---

[6] For this reason, Defendants' comparison, in an email to Plaintiff's counsel, of their notice of Dr. Engh, Jr.'s deposition with that of Plaintiffs' notice of Dr. Greg Sawyer's deposition, is entirely inapt. Plaintiffs noticed their own witness's deposition because of the pressing need to preserve the testimony of a witness with a life-threatening illness. By contrast, Defendants' notice of Dr. Engh, Jr.'s deposition appears to be a ploy to avoid cooperating on scheduling the deposition. (Indeed, Plaintiffs were at all times cooperative with respect to scheduling an actual date for Dr. Sawyer's deposition.)

Dated:  September 3, 2013	Respectfully submitted,

 /s/ Larry P. Boyd
Larry P. Boyd
FISHER, BOYD, BROWN & HUGUENARD, LLP
2777 Allen Parkway, Suite 1400
Houston, Texas 77019
(713) 400-4000
(713) 400-4050 Fax
E-mail: lboyd@fisherboyd.com

W. Mark Lanier
THE LANIER LAW FIRM
6810 FM 1960 Rd W
Houston, TX 77069-3804
(713) 659-5200
(713) 659-2204 Fax
E-mail: wml@lanierlawfirm.com

Plaintiffs' Co-Lead Counsel

Richard J. Arsenault
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71301
(800) 256-1050
(318) 561-2591 Fax
E-mail: rarsenault@nbalawfirm.com

Jayne Conroy
HANLY CONROY BIERSTEIN SHERIDAN, FISHER &
HAYES LLP
112 Madison Avenue
NY, NY 10016
(212) 784-6402 direct
(212) 213-5949 Fax
E-mail: jconroy@hanlyconroy.com

*Plaintiffs' Executive Committee on behalf of the Plaintiffs' Steering Committee*

## **CERTIFICATE OF SERVICE**

I certify that this document was served on all counsel of record by the Court's CM/ECF system, and was also forwarded to counsel for the DePuy Defendants by electronic mail, on September 3, 2013.

*/s/ Larry P. Boyd*
Larry P. Boyd

## **CERTIFICATE OF CONFERENCE**

In conformance with Local Rule 7.1, Justin Presnal conferred with Stephen J. Harburg, counsel for DePuy, by e-mail on August 26, 2013 and August 27, 2013. Mr. Harburg indicated that DePuy is opposed to the relief sought by this motion.

*/s/ Larry P. Boyd*
Larry P. Boyd