UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: DEPUY ORTHOPAEDICS, INC. PINNACLE HIP IMPLANT PRODUCT LIABILITY LITIGATION | ) ) ) ) ) | MDL No. 2244 |
| This Document Relates To: *All Cases* | ) ) ) ) ) | Honorable Ed Kinkeade |

**DEFENDANTS' POSITION PAPER REGARDING
THE BELLWETHER TRIAL SELECTION PROCESS**

Pursuant to the Special Master's January 16, 2013 Report Relating to Bellwether Trial Selection Protocol, defendants submit this position paper setting forth their recommendation for the final selection of the four initial bellwether trials in the Pinnacle Hip Implant MDL proceeding. There is currently a pool of eight potential bellwether trial cases – four selected by plaintiffs and four selected by defendants. Defendants propose that they select one of plaintiffs' four proposed candidates for the first MDL trial and that plaintiffs select one of defendants' four proposed candidates for the second trial. In other words:

- Bellwether Trial Number One would be chosen by *defendants* from one of the four cases nominated by *plaintiffs*.

- Bellwether Trial Number Two would be chosen by *plaintiffs* from one of the four cases nominated by *defendants*.

Defendants had hoped to have sufficient discovery regarding plaintiffs' trial candidates to make their selection for Bellwether Trial Number One at the hearing on September 10, 2013. However, plaintiffs now seek to postpone the depositions of two of plaintiffs' candidates' revising surgeons. Accordingly, defendants propose that the parties make their selections for the first two trials once these depositions are completed, which defendants hope will occur by the

end of this month. Defendants propose that selection of the third and fourth bellwether cases be accomplished in the same manner, but that their selection be deferred until Spring 2014, at which point the parties and the Court will have more information about the course of the litigation that will help them select the most representative cases. Selecting these cases in Spring 2014 would still allow the Court to try the first two bellwether cases in 2014 and be in a position to try the third and fourth cases beginning in early 2015.

Defendants' proposal has three important benefits: (1) it helps promote the representativeness of the first two bellwether trials by giving both parties a hand in trial selection; (2) it avoids any prejudice or delay in trial selection as a result of the problems that plaintiffs have reportedly faced in presenting certain surgeons for depositions; and (3) it allows for the third and fourth bellwether trial cases to be selected with the knowledge gained from preparing the first two cases for trial.

## BACKGROUND

On January 16, 2013, Special Master Stanton issued his Report Relating To Bellwether Trial Selection Protocol. (*See* ECF No. 247.) In the Report, Special Master Stanton outlined a process that the parties had agreed to for moving this litigation forward through the use of four initial bellwether trials. Specifically, the Special Master ordered each side to "select four revision cases as proposed bellwether trial candidates from among the cases that are pending in the MDL" by June 2, 2013. (*Id*. at 2.) The parties were then required to "submit an agreed upon list of four recommended bellwether trial selections" from this pool of eight candidates by September 2, 2013. (*Id*.) However, "if [the parties] are unable to reach an agreement" by that date, each party was asked to "submit its four cases to the Court along with a brief setting out that party's recommendation as to which four cases the Court should select as the initial

bellwether cases." (*Id*.) After reviewing the parties' submissions, the "Court will then select four cases as the initial bellwether cases and will establish the order in which those four cases will be tried." (*Id*. at 2-3.)

Consistent with the Special Master's order, defendants initially selected the cases of Michael Hodges, Byron Rowe, William Jones and Eva McKinney. McKinney was subsequently replaced by Edward McKee after it emerged that she had passed away, and Jones was replaced by Jean Garvin after plaintiffs chose to dismiss his case. Plaintiffs, for their part, selected Carol Mello, Gerald William Jones, Toni Lay and Kathleen Paoli.

In order to allow the parties and the Court to evaluate the bellwether candidates, the parties agreed to a discovery process that was supposed to be completed by August 19, 2013. Under that process, the parties were entitled to collect medical records regarding the eight potential bellwether candidates and depose those candidates and their treating surgeons. Following the June 2nd selection of the eight bellwether nominees, defendants offered to take responsibility for scheduling the surgeon depositions. Plaintiffs declined this offer, indicating that they would undertake the scheduling. (*See* emails between S. Harburg and J. Presnal, June 13, 21 & 24, 2013 (attached collectively as Ex. 1) (Appendix pp. 1-2).)

As of the date of this filing, defendants have deposed all four of the plaintiffs' proposed bellwether candidates and one candidate's revising surgeon. Defendants had planned to depose two other candidates' revising surgeons before the September 10, 2013 hearing, but plaintiffs have now sought to postpone those depositions, one due to a conflict on the part of the surgeon and the other because of a scheduling conflict on the part of plaintiffs' attorneys.[1] Defendants

---

[1] The fourth physician, Dr. Malchau, who performed plaintiff Paoli's revision surgery, is currently in Sweden and his deposition has not been set. Thus, defendants believe that plaintiff Paoli should not be considered for the first or second bellwether trial.

3

hope and expect that these two depositions will occur by the end of September. At that time, defendants will have sufficient information to make a decision as to which of plaintiffs' candidates they wish to select for the first trial.

Defendants have also deposed the four bellwether candidates proposed by defendants. However, plaintiffs reportedly experienced difficulty scheduling depositions of these four plaintiffs' revising surgeons. At this time, two of those surgeons' depositions are scheduled: one on September 18, 2013 and one on October 21, 2013.

In an attempt to reach agreement on a selection process for the four cases to be tried, the parties had a telephone conference with the Special Master on August 7. Defendants presented the proposal set forth above, and plaintiffs rejected it out of hand.

## ANALYSIS

The term "bellwether" is "derived from the ancient practice of belling a wether (a male sheep) selected to lead his flock." *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997). "The ultimate success of the wether selected to wear the bell was determined by whether the flock had confidence that the wether would not lead them astray, and so it is in the mass tort context." *Id*. As the name suggests, "the purpose of a series of bellwether trials is to 'produce a sufficient number of representative verdicts' to 'enable the parties and the Court to determine the nature and strength of the claims, whether they can fairly be developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis.'" Manual for Complex Litigation Fourth § 22.315 at 360 (4th ed. 2004); *see also In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087 BTM(KSC), 2012 U.S. Dist. LEXIS 118980, at *56 (S.D. Cal. Aug. 21, 2012) ("The bellwether cases should be representative cases that will best produce information regarding value ascertainment for settlement purposes or to answer

causation or liability issues common to the universe of plaintiffs."). Given the goal of bellwether trials, it is "critical to a successful bellwether plan that an honest representative sampling of cases be achieved" because "[l]ittle credibility will be attached to this process, and it will be a waste of everyone's time and resources, if cases are selected which do not accurately reflect the run-of-the-mill case." *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2010 U.S. Dist. LEXIS 108107, at *4, *6-7 (S.D. Ill. Oct. 8, 2010); *see also* Eldon E. Fallon, et al., *Bellwether Trials In Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2343 (2008) ("the trial selection process should . . . illustrate the likelihood of success and measure of damages" of all cases in the litigation and "[a]ny trial-selection process that strays from this path will likely resolve only a few independent cases and have limited global impact").

One way to ensure representativeness is to allow both parties input into the bellwether trial selection process. For example, in *In re Vioxx Products Liability Litigation*, 501 F. Supp. 2d 789, 791 (E.D. La. 2007), the Plaintiffs' Steering Committee and Defendant's Steering Committee "were each permitted to designate for trial five bellwether cases involving myocardial infarctions" allegedly caused by Vioxx as bellwether trial candidates. *Id*. Each side "was given two veto strikes" with the "remaining cases . . . set for trial on a rotating basis, starting with one of the plaintiffs' selections." *Id*. As Judge Eldon Fallon noted in an article published after the Vioxx settlement, the alternate-selection approach used in *In re Vioxx* is preferable to allowing "only one side" to select bellwether trial cases, which "opens the door for the inequitable stacking of overtly unfavorable and possibly unrepresentative cases, as well as creating an atmosphere of antagonism." *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. at 2350. Further, allowing "both sides of coordinating attorneys [to] make selections by exercising alternating picks" is "the most useful approach" to bellwether trial selection because it

5

"institutes fairness and attorney participation, while maintaining efficiency and placing the burden of ensuring representative cases on those with the most stake in the trial selection process." *Id.* at 2364.

The Court should adopt a similar, even-handed approach here.

*First*, as Judge Fallon and other MDL courts have recognized, when both parties collaborate on selecting bellwether trial candidates, the cases are more likely to be representative – and to produce more helpful information about the value of the cases. As the Court overseeing the *In re Yasmin & Yaz* MDL proceeding explained, "the process that will provide the best sampling of cases will be one that allows both sides of this litigation to have a role in selecting cases." 2010 U.S. Dist. LEXIS 108107, at *7-8. Many other MDL courts have followed this approach and adopted bellwether selection processes that require the parties to work together to choose bellwether trial cases and/or alternatively select trial cases from an established pool. *See, e.g.*, Joint Bellwether Plan, *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087 BTM(RBB) (S.D. Cal. Mar. 19, 2012) (attached as Ex. 2) (Appendix pp. 3-9) (providing that each party will pick an equal number of trial candidates, subject to veto from the other side, that will then be tried alternately); Pretrial Order #10 at 2, *In re: Levaquin Prods. Liab. Litig.*, No. 08-1943 (D. Minn. Mar. 8, 2011) (attached as Ex. 3) (Appendix pp. 10-11) (the "Court, upon recommendation by the parties, designated six individual plaintiffs . . . as possible bellwether" candidates and then allowed parties to take turns choosing cases to be tried); Case Management Order No. 9 at 2-3, *In re Fosamax Prods. Liab. Litig.*, No. 1:06-MD-1789(JFK) (S.D.N.Y Jan. 31, 2007) (providing that each party will pick 12 cases to fill the bellwether trial pool, with the Court picking an additional case; from that pool, plaintiffs, defendants and the court will each pick a trial case and the court "will randomly select the order in which each of the three cases

will be tried"); Order Re: Bellwether Trial Selection, *In re Prempro Prods. Liab. Litig.*, No. 4:03-CV-1507-WRW (E.D. Ark. Jun. 20, 2005) (court to select 15 cases at random for the bellwether trial pool and then the "parties must 'meet and confer'" to "together select" five cases that involve representative plaintiffs for trial). Such collaborative approaches give the parties "better control over the representative characteristics of the cases selected" and are therefore more likely to result in bellwether cases that are typical of the litigation pool. *In re Yasmin & Yaz*, 2010 U.S. Dist. LEXIS 108107, at *7.

*Second*, defendants' proposal avoids any prejudice or delay from the difficulty plaintiffs have reportedly experienced in obtaining deposition dates for the surgeons who performed revision surgeries on defendants' four bellwether nominees. As noted above, defendants hope to have deposed three of the four revising surgeons for plaintiffs' bellwether nominees by the end of September 2013. At that point, defendants will have the discovery they need to select what they believe is the most representative case from plaintiffs' pool.[2] While defendants have not yet been able to depose the revising surgeons for defendants' own four nominees, that delay will not affect bellwether trial selection under defendants' proposal since *plaintiffs* will choose the second trial from defendants' four nominees. Unlike defendants who are limited from engaging in *ex parte* conversations with revising physicians, plaintiffs' counsel can speak informally with

---

[2] Defendants note that plaintiffs' four proposed candidates are not representative of the pool of potential bellwether cases. For example, all four of those candidates have had both their left and right hips replaced. By contrast, based on an analysis of complaints, it appears that less than 15 percent of the plaintiffs in the MDL proceeding who have had revisions received bilateral replacements in the first place. Further, three of plaintiffs' four selections (Lay, Mello and Paoli) have had both of their artificial hips revised. Based on the same analysis of complaints, less than five percent of the plaintiffs in the MDL proceeding who underwent revisions match this profile. Finally, one of plaintiffs' selections (Lay) has had both bilateral revisions and multiple revisions on one of her hips, a profile matched by less than one percent of MDL plaintiffs with revisions. By contrast, all four of defendants' selections are plaintiffs with one implant and one revision. This category represents approximately 78.5% of the population of revised MDL plaintiffs.

the four revising surgeons for defendants' bellwether nominees and select the plaintiff for the second bellwether trial before those surgeons are formally deposed.

***Third***, defendants' suggestion that the parties wait until Spring 2014 to select the third and fourth bellwether trials will enable the parties and the Court to make those selections with more knowledge about the litigation, particularly given the delays that have occurred in discovery. Under defendants' proposal, cases would be selected for the third and fourth trials after significant development of the first two cases. This approach would allow the parties and the Court to evaluate the issues raised by the first two trials and select follow-up trial candidates that will present different facts or represent a different segment of the cases in the general MDL pool.

In short, defendants propose a bellwether trial-selection process that gives both sides input into trial selection, avoids delay, and best positions the Court to preside over trials that have a meaningful impact on this litigation. Accordingly, the trial-selection method proposed by defendants will best serve the goals of the bellwether process and ensure fairness to both parties.

Dated: September 3, 2013

Respectfully submitted,

s/ Michael V. Powell
Michael V. Powell
Seth M. Roberts
LOCKE LORD BISSELL & LIDDELL, LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8453

s/ John H. Beisner
John H. Beisner
Stephen J. Harburg
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

COUNSEL FOR DEFENDANTS DEPUY ORTHOPAEDICS, INC.; JOHNSON & JOHNSON; AND JOHNSON & JOHNSON SERVICES, INC.

## **CERTIFICATE OF SERVICE**

I, John H. Beisner, hereby certify that the foregoing was served on counsel of record through the CM/ECF system on September 3, 2013.

Dated:  September 3, 2013                    Respectfully submitted,

                                                       s/ John H. Beisner
                                                      John H. Beisner
                                                      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                                      1440 New York Avenue, N.W.
                                                      Washington, D.C. 20005
                                                      Tel:  (202) 371-7000
                                                      Fax:  (202) 661-8301
                                                      Email:  john.beisner@skadden.com

                                                      Counsel for Defendants

                                                      *Counsel for Defendants DePuy Orthopaedics, Inc.; Johnson & Johnson; and Johnson & Johnson Services, Inc.*