**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| IN RE: DEPUY ORTHOPAEDICS, INC. PINNACLE HIP IMPLANT PRODUCT LIABILITY LITIGATION | ) ) ) ) MDL No. 2244 |
| This Document Relates To: *ALL CASES* | ) ) ) Honorable Ed Kinkeade ) ) ) ) |

# APPENDIX TO DEFENDANTS' POSITION PAPER REGARDING THE BELLWETHER TRIAL SELECTION PROCESS

1. Emails between S. Harburg and J. Presnal, June 13, 21 & 24, 2013

2. Joint Bellwether Plan, *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087 BTM(RBB) (S.D. Cal. Mar. 19, 2012)

3. Pretrial Order #10, *In re: Levaquin Prods. Liab. Litig.*, No. 08-1943 (D. Minn. Mar. 8, 2011)

# EXHIBIT 1

**From:** Presnal, Justin [mailto:JustinP@fisherboyd.com]
**Sent:** Monday, June 24, 2013 12:55 PM
**To:** Harburg, Stephen J (WAS)
**Cc:** TRACY J. VAN STEENBURGH (tvan@nilanjohnson.com); Wiegand, Erin; Cadelago, Melissa; Laura Singletary; Alex Brown
**Subject:** Re: Treating Doctor Deposition Notices

Steve -

We are (and have been) working on all of these things.  I anticipate having available medical records to you on the 8 bellwether plaintiffs early this week.  Scheduling is more complicated, but we are working with counsel for all of the 8 to get that arranged.  Some are obviously easier to coordinate than others.

We have been trying to get in touch with the vendor handling plaintiff medical record requests, but I don't know if we have heard back from them yet (I haven't but one of my team may have).

I will be on vacation starting tomorrow for the rest of the week.  Should you need anything from our side during that time, reach out to Alex - he's up to speed on everything.

JP


On Jun 21, 2013, at 5:10 PM, "Harburg, Stephen J" <Stephen.Harburg@skadden.com> wrote:

Justin,

      Following up on the email below, I wanted to check in on a couple of issues.  First, do you have any update on when we will be receiving the medical records and x-rays that are currently in the possession of the bellwether plaintiffs and their lawyers?  Although this issue is more urgent in the context of the upcoming deposition of Dr. Sawyer, it is also relevant to our preparation of the depositions of the bellwether treating surgeons and the bellwether plaintiffs and it is important that we get the records and x-rays promptly.  Second, do you have any update on scheduling for any of the bellwether surgeons?  In that regard, in order to simplify matters, we do not need the depositions of Drs. Whiddon, Ford and Rulwicz at this time.  Similarly, we only need Dr. Allmacher in the Lay case, not the Herlihy-Paoli case.  Further, if it would help the process, we are willing to contact the surgeon's offices' directly, with the agreement that we would only discuss deposition scheduling, not anything related to their patients.  Third, we also need to schedule the depositions of the bellwether plaintiffs themselves.  We would like to schedule each plaintiff before we depose that plaintiffs' surgeon.  As with the surgeon depositions, we will need the medical records before the deposition, and accordingly would ask that you schedule those depositions starting sometime after July 15.  Please let me or Tracy know if you have any questions.  Thanks.

**Stephen J. Harburg**
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W. | Washington | D.C. | 20005-2111
T: 202.371.7470 | F: 202.661.2307
stephen.harburg@skadden.com

2

Skadden

 Please consider the environment before printing this email.

**From:** Harburg, Stephen J (WAS)
**Sent:** Thursday, June 13, 2013 6:42 PM
**To:** Justin Presnal (justinp@fisherboyd.com)
**Cc:** TRACY J. VAN STEENBURGH (tvan@nilanjohnson.com)
**Subject:** Treating Doctor Deposition Notices

Justin,

      Attached are notices for the depositions of the treating doctors of the eight proposed bellwether candidates.  Where different doctors performed the original surgery and the revision surgery, we have included notices for both.  We have left open the dates and locations for the depositions, since we understand that those will depend on the doctors' schedules.  It is my understanding that plaintiffs' counsel will handle contacting these doctors and arranging their depositions.  If that is not the case, please let me know.  Also, if there is anyone else we should be coordinating with in order to schedule these depositions let me know as well.  As you know, we are in the process of collecting the full sets of medical records for the bellwether plaintiffs.  We hope that the collection process will be done by mid-July.  Accordingly, we would ask that you schedule the treating doctor depositions starting sometime after July 15.   In addition, it is my understanding that plaintiffs will be sending us the medical records they have already collected on the bellwether plaintiffs, including any x-rays they have received.  Please feel free to contact me or Tracy Van Steenburgh, who will be coordinating the bellwether discovery effort on our side, if you have any questions.  Thanks.

**Stephen J. Harburg**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**1440 New York Avenue, N.W. | Washington | D.C. | 20005-2111**
**T: 202.371.7470 | F: 202.661.2307**
**stephen.harburg@skadden.com**

Skadden

 Please consider the environment before printing this email.

2

Appendix 2

# EXHIBIT 2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HYDROXYCUT MARKETING AND SALES PRACTICE LITIGATION | Case No. 3:09-md-2087-BTM-RBB<br><br>**JOINT BELLWETHER PLAN** |

## BELLWETHER PLAN

**I.    SCOPE OF JOINT BELLWETHER PLAN**

This Joint Bellwether Plan shall govern all individual personal injury cases that are presently pending or hereafter filed in this Court or transferred to this Court by the Judicial Panel on Multidistrict Litigation for coordination of pretrial proceedings relating to the *In Re Hydroxycut Marking and Sales Practices Litigation*, MDL No. 2087. This Case Management Order is limited in scope to the discovery addressed herein. Additional discovery will be addressed in subsequent case management orders.

**II.   PARTICIPANTS**

This Joint Bellwether Plan is filed on behalf of the Plaintiff Steering Committee ("PSC") and all the Defendants that have appeared in the MDL: the Iovate entitites: HDM Formulations Ltd., Iovate Copyright Ltd., Iovate HC 2005 Formulations Ltd. (n/k/a HDM Formulations Ltd.), Iovate Health Sciences Capital Inc., Iovate Health Sciences Group Inc. (n/k/a Kerr Investment Holding Corp.), Iovate Health Sciences Inc., Iovate Health Sciences International Inc., Iovate Health Sciences Research Inc., Iovate Health Sciences U.S.A., Inc., Kerr Investment Holding Corp. (f/k/a Iovate Health Sciences Group Inc.), Muscletech Research and Development Inc.; the Retailer defendants: BodyBuilding.com, LLC, Costco Wholesale Corporation, CVS Pharmacy, Inc., CVS RX Services, Hook-SupeRx, LLC, General Nutrition Centers, Inc., General Nutrition Corporation, GNC Corporation, Prosource Performance Products, Inc., Rite Aid Corporation, Target Corporation, Vitamin Shoppe Industries, Inc., Wal-Mart Associates, Inc., Wal-Mart Stores East, Inc., Wal-Mart Stores East, LP, Wal-Mart Stores, Inc., Wal-Mart Stores, Inc. (d/b/a Sam's Club), Sam's East, Inc., Sam's West, Inc., and Walgreen Co. (d/b/a Walgreens); the Manufacturer defendants: Vitaquest International, LLC, Protein Research, HVL, LLC, erroneously served and sued as HVL, Inc. d/b/a Douglas Laboratories and Douglas Laboratories, Bactolac Pharmaceutical, Inc., Cornerstone Research and Development, Inc.; Parke-Davis Company d/b/a Capsugel, Pfizer, Inc. d/b/a Capsugel, Indfrag, Indfrag Limited d/b/a Indfrag, Interhealth

Nutraceuticals, Inc., Marco Hi-Tech JV, LLC, Marco Hi-Tech JV, LTD, and Marco Hi-Tech, jointly "Defendants".

### III. PLAINTIFF FACT SHEETS

#### A. Plaintiff Fact Sheets

All Plaintiffs shall continue to comply with this Court's previous Case Management Order dated September 13, 2010 (Document 345) as regards to completion of Plaintiff Fact Sheets ("PFS"), and dismissal procedures related to non-compliance with completion of PFS.

#### B. Amendment #1 to Plaintiff's Fact Sheets

Plaintiffs have until **March 30, 2012** to complete and serve Amendment #1 to PFS pursuant to Case Management Order No. 3 dated February 14, 2012. (Document 1063-1). Otherwise they shall be subject to the dismissal procedure established in this Court's previous Case Management Order dated September 13, 2010 (Document 345).

### IV. BELLWETHER PLAN

#### A. "Bellwether Process"

Defendants and Plaintiffs' PSC have met and conferred regarding a "bellwether" process, and submit the following:

1. Following submission of Amendment #1 to the PFS by **March 30, 2012**, the parties shall have until **April 16, 2012** to meet and confer about deficiencies in Amendment #1 to PFS.

**Procedure for PSC Bellwether Choice:**

2. The PSC shall pick four (4) "bellwether cases" for inclusion in the bellwether program. Given that there are multiple products involved in these cases, the PSC has agreed to choose a total of four (4) cases, with at least one from each of the following two (2) categories:

    a. <u>Category 1</u>- Plaintiff consumed a Hydroxycut Hardcore Product: either Hydroxycut Hardcore Liquid Caplets®, Hydroxycut Hardcore Drink Packets®, or Hydroxycut Hardcore RTDs®.

  **b.** <u>Category 2</u> - Plaintiff consumed a Hydroxycut White Box Product: either Hydroxycut Regular Rapid Release Caplets®, or Hydroxycut Caffeine-Free Rapid Release Caplets®.

 **3.** Under the provisions outlined above, the PSC shall also choose a total of two (2) cases, one case from each category above, for inclusion in the bellwether process as "back up" cases; these cases would be available for substitution in the event that a chosen bellwether case is settled or dismissed.

 **4.** If a Plaintiff took more than one type of Hydroxycut product they are not eligible for participation in the bellwether program.

 **5.** Within the two categories, listed above, the PSC may choose Plaintiffs for bellwether selection with any type of category of injury.

 **6.** The PSC may only choose cases for the bellwether process, if the chosen Plaintiff has completed and submitted both a PFS and Amendment #1 to the PFS to Defendants.

**Procedure for Defense Bellwether Choice**:

 **7.** The Defendants shall pick four (4) "bellwether cases" for inclusion in the bellwether program. Given that there are multiple products involved in these cases, the Defendants have agreed to choose a total of four (4) cases, with at least one from each of the following two (2) categories:

  **a.** <u>Category 1</u>- Hydroxycut Hardcore Products: Hydroxycut Hardcore Liquid Caplets®, Hydroxycut Hardcore Drink Packets®, or Hydroxycut Hardcore RTDs®.

  **b.** <u>Category 2</u> - Hydroxycut White Box Products: Hydroxycut Regular Rapid Release Caplets®, or Hydroxycut Caffeine-Free Rapid Release Caplets®.

 **8.** Under the provisions outlined above, the Defendants shall also choose a total of two (2) cases, one case from each category above for inclusion in the bellwether process as "back up" cases; these cases would be available for substitution in the event that a chosen bellwether case is settled or dismissed.

    **9.**     Product Consumption Limitation

          If a Plaintiff took more than one type of Hydroxycut product they are not eligible for participation in the bellwether program.

    **10.**    Within the two categories, listed above, the Defendants may choose Plaintiffs for bellwether selection with any type of category of injury.

    **11.**    The Defendants may choose any case for the bellwether process, regardless of whether the chosen Plaintiff has completed and submitted both a PFS and Amendment #1 to the PFS to Defendants. Once a Plaintiff is chosen by the Defendants and Defendants notify Plaintiff of their selection, if that Plaintiff has not completed their PFS or Amendment #1 to the PFS, both shall be due and completed by **June 1, 2012**. The bellwether process contemplates that Defendant Fact Sheets must be produced by **June 1, 2012**. Negotiating the final Defendant Fact Sheet for use in this MDL shall be made a priority by all parties. If a Defendant cannot in good faith finalize or present a completed Fact Sheet by June 1, 2012, a meet and confer process amongst the parties shall commence in good faith. Unresolved issues shall be brought before the Court in a timely matter.

**General Provisions:**

    **12.**    Once the parties have chosen their bellwether cases, they shall exchange the lists of the bellwether cases by **April 20, 2012**, and provide a joint status update to the Court by **April 27, 2012**, which shall include a list of the parties' eight (8) designated bellwether cases.

    **13.**    Veto Power

          If either side chooses more than three (3) cases from any product category, those cases are subject to veto from the bellwether program by the opposing party. The opposing party may veto any of the proposed cases within that product category; once vetoed that case may not be re-proposed for participation in the bellwether process.

    **14.**    Discovery related to Plaintiff Fact Sheets and product identification for all Plaintiffs and Defendant Fact Sheets shall not be limited and shall be allowed to continue during the bellwether process.

15. Discovery other than that related to Plaintiff Fact Sheets and product identification and Defendant Fact Sheets, shall be limited to discovery in the eight (8) designated bellwether cases and the four (4) designated bellwether "back up" cases.

16. If one of the designated bellwether cases settles or is dismissed, the side that designated that case may designate a new case from the designated "back up" category, if the case is from the same product category. If a back-up case has already been substituted and no remaining back-ups remain from that product category, the parties shall meet and confer to identify a process for selecting, or they may select, one or more alternative back up cases. If the selection issue cannot be resolved through the meet-and-confer process, the parties may contact the Court and request a conference to discuss further back up cases and the status of the bellwether plan.

17. Discovery to Non-named Defendants

At this time, if a Defendant is not named in any of the eight (8) designated bellwether cases or the four (4) designated bellwether "back up" cases, discovery can proceed against those Defendants. It is premature to determine whether a complete ban on all discovery from non-named Defendants is appropriate. This provision does not preclude a Defendant from applying for a protective order if circumstances warrant.

18. Nothing in this Case Management Order shall prevent Defendants from moving for early summary judgment or partial summary judgment in any case or category of cases for lack of general or specific causation, lack of compliance with the Court's Plaintiff Fact Sheet Order (Document 345), failure to prosecute, statute of limitations, or any other procedural or substantive bar to any claim.

B. **Bellwether Case Deadlines**

1. <u>Fact Discovery Plan</u>

    a. The parties shall submit fact discovery plans for <u>each</u> of the eight (8) designated bellwether cases and four (4) "back up" cases by **May 4, 2012**.

    b. The discovery plans shall include proposals for fact discovery deadlines, including but not limited to deposition schedules of all fact witnesses, and proposals

for dates of all of Plaintiffs' treating physicians. The plans shall also include a designated counsel from each side to coordinate discovery schedules.

    **2.**    <u>Expert Discovery Plan</u>

    a.    The parties shall submit one expert discovery plan by **June 1, 2012** limited to the eight (8) designated bellwether cases and the four (4) "back up" cases.

    b.    The discovery plans shall include a proposal for exchange of all expert disclosures. This plan may include a bifurcated discovery plan, with Plaintiffs disclosing their experts' identity and required disclosures first, followed by the defense expert disclosures. The discovery plan shall also include a proposal for expert discovery deadlines, including the deposition schedule for Plaintiffs' experts, followed by depositions of Defendants' experts.

    **3.**    <u>Trial Plan</u>

    a.    The parties shall submit a joint bellwether trial plan by **July 1, 2012**.

    b.    The trial plan shall include deadlines for filing all bellwether *Daubert* motions, motions *in limine*, proposed jury instructions, voir dire questions, settlement conference plan, as well as proposals for the order by which the bellwether cases shall be selected for trial.

    c.    Trial of Bellwether Cases:

        **(i)**    Plaintiffs and Defendants may present a joint or separate trial plans by July 1, 2012.

**IT IS HEREBY ORDERED.**

Dated: March 19, 2012

_____
Honorable Ruben B. Brooks
United States Magistrate Judge

# EXHIBIT 3

## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: LEVAQUIN PRODUCTS LIABILITY LITIGATION | MDL No. 08-1943 (JRT) |

This Document Relates to:

**Civil No. 06-3728**

Sharon Johnson and Harold Wampler
    v.
Johnson & Johnson, *et al.*

**Civil No. 07-1862**

Richard Kirkes, William Laufenberg and Billie Johnson
    v.
Ortho McNeil Pharmaceutical, Inc., *et al.*

**PRETRIAL ORDER # 10**

**Civil No. 07-3960**

Calvin Christensen, Edward Karkoska, Jerry Cullins and Wilfred Delude
    v.
Ortho McNeil Pharmaceutical, Inc., *et al.*

**Civil No. 08-5745**

Eugene Martinka
    v.
Johnson & Johnson, *et al.*

       Ronald S. Goldser, **ZIMMERMAN REED, PLLP**, 1100 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402; and Lewis J. Saul, **LEWIS SAUL & ASSOCIATES**, 183 Middle Street, Suite 200, Portland, ME 04101, for plaintiffs.

John Dames, **DRINKER BIDDLE & REATH LLP**, 191 North Wacker Drive, Suite 3700, Chicago, IL 60606-1698; James Irwin, **IRWIN FRITCHIE URQUHART & MOORE, LLC**., 400 Poydras Street, Suite 2700, New Orleans, LA 70130, and Tracy J. Van Steenburgh, **NILAN JOHNSON LEWIS, PA**, Suite 400, 120 South Sixth Street, Minneapolis, MN 55402, for defendants.

In Pretrial Order No. 6, the Court, upon recommendation by the parties, designated six individual plaintiffs (Phase I plaintiffs) from the Multi-District Litigation cases to be tried as possible bellwether cases. (Docket No. 1036.) The remaining five Phase I plaintiffs are Sharon Johnson (06-3728), Richard Kirkes (07-1862), Calvin Christensen and Edward Karkoska (07-3960), and Eugene Martinka (08-5745). The first bellwether trial involving the sixth Phase I plaintiff, John Schedin, was tried before the Court and a jury in November 2010. *Schedin v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.* (08-5743.) After consultation with and argument by the parties, the Court finds that one of the Phase I plaintiffs , Edward Karkoska (07-3960), should be stricken from the list of potential bellwether plaintiffs, as not ready for trial and possibly subject to dismissal.

At this stage, it is the Court's intent to permit defendants to choose the next plaintiff for a bellwether trial from the remaining Phase I plaintiffs identified in Pretrial Order No. 6. The Court has indicated its present intent that the trial be commenced on May 31, 2011 at 9:00 A.M. The trial will be held in Courtroom 13E at the United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415.

DATED: March 8, 2011  
at Minneapolis, Minnesota.

                                                  s/ John R. Tunheim  
                                                 JOHN R. TUNHEIM  
                                                 United States District Judge