**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| IN RE: DEPUY ORTHOPAEDICS, INC. PINNACLE HIP IMPLANT PRODUCT LIABILITY LITIGATION | MDL No. 2244 |
| This Document Relates To: | Honorable Ed Kinkeade |
| *Aoki v. DePuy Orthopaedics, Inc., et al.* No. 3:13-cv-01071-K | |
| *Christopher v. DePuy Orthopaedics, Inc., et al.* No. 3:14-cv-01994-K | |
| *Greer v. DePuy Orthopaedics, Inc., et al.* No. 3:12-cv-01672-K | |
| *Klusmann v. DePuy Orthopaedics, Inc., et al.* No. 3:11-cv-02800-K | |
| *Peterson v. DePuy Orthopaedics, Inc., et al.* No. 3:11-cv-01941-K | |
| *Thibodeau v. DePuy Orthopaedics, Inc., et al.* No. 3:13-cv-01027-K | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO AMEND SECOND AMENDED ORDER ON BELLWETHER TRIALS**

Plaintiffs do not deny that they selected three bellwether plaintiffs who had Dr. Heinrich as a treating physician and then, after attaining bellwether status for those cases, amended their complaints to add allegations that would make a spectacle out of Dr. Heinrich's relationship with DePuy at a trial of any of those three cases. The thrust of plaintiffs' response is that these cases are nevertheless representative of the broader pool of cases because DePuy has made "payments . . . to hundreds of orthopedic surgeons all over the country." (Pls.' Opp'n at 3.) They also contend that their Heinrich-specific causes of action will not distract the jury and that defendants were dilatory in raising this issue. These arguments should be rejected.

*First*, the mere fact that DePuy has relationships with other doctors does not make these cases representative of the broader pool, and plaintiffs' contrary suggestion (*see* Pls.' Opp'n at 3) is disingenuous. The focus of the allegations in plaintiffs' amended complaints is not merely on the fact that Dr. Heinrich received payments from DePuy, but specifically that DePuy retained him *as an expert witness in the Pinnacle MDL litigation*. For example:

- In connection with their tortious-interference claim, plaintiffs allege that "[d]efendants secretly solicited Dr. Heinrich's services *as a consulting expert in this MDL* despite knowing that Dr. Heinrich's prior and ongoing treatment of patients, including Plaintiff Richard Klusmann, was directly related to this litigation." (*Klusmann* Am. Compl. ¶ 135 (emphasis added).)

- Under the same claim, plaintiffs further allege that defendants "offered to pay Dr. Heinrich *as an expert to develop opinions and theories about claims* involving failed Pinnacle MoM hip implants that were intended to defeat the plaintiffs' claims against Defendants *in this MDL litigation*, including the claims of Plaintiff Richard Klusmann and other patients of Dr. Heinrich." (*Id.* (emphases added).)

- Also under the same claim, plaintiffs assert that "Dr. Heinrich's duties *as Defendants' consulting expert* necessarily and directly conflict with Dr. Heinrich's duty to treat Richard Klusmann with only Klusmann's best interests in mind." (*Id.* (emphasis added).)

- Plaintiffs also contend, again under the same claim, that "[b]efore *engaging Dr. Heinrich as an expert witness*, Defendants knew that Dr. Heinrich was treating Richard Klusmann, and Defendants intentionally compromised Dr. Heinrich's ability to continue treating him according to their established relationship and Dr. Heinrich's ethical duties to Mr. Klusmann." (*Id.* ¶ 139 (emphasis added).)

- Plaintiffs' allegations under their claim of vicarious liability for breach of fiduciary duty are similar. For example, plaintiffs allege that "[i]n the course and scope of his employment *as Defendants' consulting expert*, Dr. Heinrich breached fiduciary duties owed to Richard Klusmann, and Defendants are vicariously liable for this breach as Dr. Heinrich's principal." (*Id.* ¶ 144 (emphasis added).)

- Under the same cause of action, plaintiffs allege that Dr. Heinrich "breached fiduciary duties owed to Klusmann" when he "failed to disclose to Klusmann that *his role as an expert in this case* created a conflict of interest"; "voluntarily *serv[ed] as a retained expert witness for Defendants* in litigation directly related to Dr. Heinrich's treatment of Mr. Klusmann"; and, "in the course and scope of his *employment as Defendants' expert in this case*, Dr. Heinrich used Klusmann's confidential medical information to generate theories, strategies, and

2

    opinions intended to help Defendants avoid liability for, along with other plaintiffs' claims, the injuries sustained by Klusmann." (*Id.* ¶ 145 (emphases added).)

- Plaintiffs further allege under the fiduciary-duty claim that defendants "are vicariously liable" because they "***employ[ed] Dr. Heinrich as an expert*** in this litigation" and "specifically requested" that he "perform the very acts described above." (*Id.* ¶ 146 (emphasis added).)

As these central contentions in support of plaintiffs' new causes of action make clear, the issue is not merely plaintiffs' allegations that DePuy "pa[id] surgeons to promote and use their products" (Pls.' Opp'n at 3), but their allegations that Dr. Heinrich's retention as an expert in this litigation uniquely wronged these particular plaintiffs. Such allegations threaten to take center stage at the trial of any of these three cases and shift the focus away from whether a defect in the Pinnacle Cup System was the cause of an injury to plaintiffs. Instead, trial would focus on whether Dr. Heinrich – who is not even testifying as a retained expert in these cases – did something wrong by agreeing to serve as an expert in the Pinnacle MDL litigation or not making certain disclosures about that retention.

*Second*, as the foregoing discussion makes clear, plaintiffs' assertion that inserting these issues into trial would not create a "'sideshow'" (Pls.' Opp'n at 6) also lacks merit. Indeed, plaintiffs do not even attempt to explain how these allegations, which have not appeared in the other ten bellwether cases that have been worked up so far, could be tried in a way that would not overshadow the issues in these cases that actually do arise in the broader claims pool. Plaintiffs instead opt for platitudes about the intelligence of jurors and the efficacy of the judicial process. (*See id.*) But the principal concern, regardless of how wise the jury may be, is that these cases could be decided on issues that have no bearing on the vast majority of pending cases in this litigation. (*See* Mot. at 6.) A verdict on these grounds would be of little use to anyone

other than these three plaintiffs and would therefore effect precisely the waste of "time and resources" that plaintiffs claim they wish to avoid in their opposition. (*See* Pls.' Opp'n at 6.)

*Third*, plaintiffs' argument that it is too late to remove these plaintiffs from the bellwether pool because defendants knew Dr. Heinrich was their treating surgeon "as soon as those cases were identified as potential bellwethers" (Pls.' Opp'n at 6) is wrong for multiple reasons. As a threshold matter, the notion that parties must object to bellwether candidates at the outset or forever hold their peace lacks legal support and is contradicted by common MDL practice, under which multiple candidates are worked up for trial but only one is ultimately selected. Indeed, that is precisely the course *this MDL* followed in the first round of bellwether cases.

In any event, plaintiffs' timeliness objection makes no sense. As they acknowledge elsewhere in their motion, defendants requested exclusion of these plaintiffs *months ago*. (*See* Pls.' Opp'n at 5.) Then, as now, defendants emphasized that plaintiffs' status as patients of Dr. Heinrich "would allow plaintiffs to undermine [Dr. Heinrich's] credibility with the jury by focusing on his role as a testifying expert for defendants, something that plaintiffs can do regardless of whether defendants designate him as an expert in those cases, based on his past role as a testifying expert," meaning that the cases "would not be at all representative of the other cases in the MDL proceeding that could be tried." (Email from Stephen J. Harburg to James M. Stanton, Aug. 5, 2015 (attached as Ex. 1) (Appendix p. 1).) The fact that the Court has not acted on defendants' prior request does not make this one untimely; and the fact that the three plaintiffs amended their complaints to add claims specific to Dr. Heinrich's involvement in their cases only serves to amplify the non-representative nature of these cases and to bolster defendants' still-pending objection.

4

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in their opening brief, defendants respectfully request that the Court remove Mr. Peterson, Mr. Klusmann and Ms. Aoki from the pool of bellwether plaintiffs for the upcoming trial.

Dated:  November 19, 2015

Respectfully submitted,

s/ Michael V. Powell
Michael V. Powell
Seth M. Roberts
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8453

s/ Stephen J. Harburg
John H. Beisner
Stephen J. Harburg
Jessica Davidson Miller
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

COUNSEL FOR DEFENDANTS DEPUY ORTHOPAEDICS, INC., DEPUY PRODUCTS, INC., DEPUY INTERNATIONAL, LTD., JOHNSON & JOHNSON and JOHNSON & JOHNSON SERVICES, INC.