## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| *IN RE*: DEPUY ORTHOPAEDICS, INC. | ) | |
| PINNACLE HIP IMPLANT PRODUCT | ) | MDL No. 2244 |
| LIABILITY LITIGATION | ) | |
| —————————————————— | ) | |
| | ) | |
| *This Document Relates To:* | ) | Honorable Ed Kinkeade |
| | ) | |
| ALL CASES | ) | |
| —————————————————— | ) | |

### PLAINTIFFS' EXECUTIVE COMMITTEE'S RESPONSE TO MOTIONS[1] FOR CASE MANAGEMENT CONFERENCE

MAY IT PLEASE THE COURT:

Despite assertions to the contrary, the Court-appointed Plaintiffs' Executive Committee (hereinafter "PEC") continues to serve at the Court's pleasure, continues to fulfill its Court-appointed obligations, and will continue to assist Plaintiff Counsel as needed.

However, regarding settlement activity, it is the Defendants that dictate how, if, and when cases get settled. Neither the Court nor the PEC can dictate otherwise. For nearly eight years the Defendants refused to engage in any settlement dialogue. Then, as the PEC prepared for the fifth bellwether re-trial, unbeknownst to the PEC, approximately 4,000 cases were settled for what was reported to be a per case average of $125,000. Other confidential sources suggest the per case average was less.

---

[1] *See* Doc. 1005 (Maglio Motion); Doc. 1006 (Herren & Adams Motion); Doc. 1007 (Regan Motion); Doc. 1008 (Yackulic Motion); Doc. 1009 (Leemon Motion); Doc. 1010 (Rheingold Motion).

Many of those clients are represented by experienced mass tort counsel including certain PSC members. The Defendants were apparently emboldened by the settlements. And again, those cases were settled without PEC knowledge or participation.

As the PEC was later advised by the Defendants and reported to Plaintiff Counsel on February 8, 2019, the Defendants were and continue to be prepared to engage in dialogues directly with Plaintiff Counsel regarding their inventories of Pinnacle metal-on-metal revised cases. Details were described in the February 8 communication. Having said that, the Defendants have refused to engage in any global resolution.

In its May 24, 2011 Transfer Order creating MDL 2244, the Judicial Panel on Multidistrict Litigation expressed confidence that Judge Kinkeade would "steer this litigation on a prudent course." (Doc. 1, at 2 - 3.) And His Honor has done precisely that in connection with overseeing this massive MDL involving in excess of 10,000 cases. The Court rolled up its sleeves and skillfully presided over four bellwether trials to completion and began a fifth earlier this year -- trials embedded with dozens of complex issues and literally thousands of objections. Judge Kinkeade has capably guided this massive MDL since its inception and has observed, in real time, the extraordinary efforts by the Court-appointed PEC.

The bellwether trials involved 18 plaintiffs (as well as spousal-consortium plaintiffs) and the application of four different states' laws. Over nearly eight years, the PEC has engaged in extensive motion practice, discovery, as well as four complete bellwether trials consuming 134 days of trial producing over 31,500 pages of trial transcripts. In addition, there have been nearly 1,000 entries made to the docket, over 300

depositions conducted, and over 100 million pages of documents produced by and amongst the parties in this litigation.  In addition, the PEC handled two merits appeals and three mandamus petitions to the Fifth Circuit.  All of this has been carefully and capably monitored by Judge Kinkeade.

The Court has already acknowledged the extensive amount of time, effort and skill required to prepare and try four bellwether cases to conclusion, begin a fifth, and to fully brief and argue two appeals. (Doc. 889, at 2.) Moreover, it cannot be disputed that these cases have presented complex factual and legal issues. Defendants retained a multitude of scientific experts. This required not only extensive trial advocacy skills and expertise, but also the ability to dissect reams of scientific literature. The PEC likewise retained and prepared a huge number of experts regarding innumerable fields ranging from pathology to bio-mechanical engineering to marketing.

From the inception of this litigation, the Court has carefully and methodically considered Common Benefit issues regarding this MDL.  Relevant Orders have included:

- June 20, 2012 Order Regarding Management of Timekeeping, Cost Reimbursement and Related Common Benefit Issues (Doc. 153);

- August 29, 2018 Preliminary Holdback Order (Doc. 889);

- November 29, 2018 Order requesting in camera submissions of settlement data (Doc. 914); and

- December 9, 2018 Amended Preliminary Holdback Order (Doc. 924).

These Orders describe the genesis and Common Benefit progression, all of which reflects the Court's meticulous guidance.  Currently, the Special Master is engaged in

auditing the submitted time and expenses which will facilitate the Court entering a final common benefit assessment order.

Since the inception of this litigation, the PEC has regularly communicated with and responded to the many inquiries from the more than 1,300 plaintiff lawyers involved with the over 10,000 cases pending in this MDL. In fact, during each bellwether trial the PEC reported daily on key activity taking place and provided detailed descriptions regarding each witness. In the over 25 MDLs the PEC Members have collectively been involved in, there has never been any more transparency and detailed communications than with this MDL. The PEC's exchanges with Plaintiff Counsel Altom Maglio, who filed one of the instant Motions, are illustrative. Mr. Maglio sent an email with questions on February 11, 2019 at 8:02 AM and received a comprehensive response that same day. He sent another email on February 12 at 7:38 AM and by noon that same day, he received yet another comprehensive response.

The PEC has rolled up its sleeves, incurred huge litigation expenses, and complied with the Court's bellwether plan. The Court has advised that there will be no additional bellwether cases and is working on a remand plan. The five bellwether trials conducted and the File Transfer Protocol (FTP)[2] site created by the PEC, which includes each trial transcript, every admitted exhibit, along with the over 300 depositions taken in connection with this herculean effort, provide a comprehensive roadmap for cases that

---

[2] FTP is an application that allows the electronic transfer and sharing of files between computers.

get remanded. The plaintiff lawyers that have followed this litigation, armed with these resources, will be prepared for the trials of remanded cases.

The statute that permits Multidistrict Litigation ("MDL") confirms that the function of an MDL is to conduct coordinated pretrial discovery. 28 U.S.C. § 1407. And the PEC has methodically complied with that obligation. However, MDLs were not created to settle cases, though that is a common misconception. Moreover, the purpose of an MDL is not to create a trial package. Nevertheless, with the materials the PEC has compiled and has made available to MDL Plaintiff Counsel upon request, the PEC has created an exemplary one. Eighteen individual bellwether cases were taken to trial from four different states. These trials have provided comprehensive guidance for remanded cases. And as previously noted, the PEC is also maintaining an FTP site where any Plaintiff Counsel who has a case in MDL 2244 can access: (1) all of the exhibits that were introduced in each of the five trials, (2) all of the trial transcripts from the five trials, (3) all motions in limine, (4) jury questionnaires, jury charges and verdict forms, (5) access to over 300 depositions that have been taken, (6) dispositive motions along with the PEC's responses, and (7) appellate court briefing. The PEC has and will also continue making itself available to respond to questions and report on significant developments.

Attorneys with cases filed or transferred into any MDL obviously have an obligation to keep abreast of the litigation. When the JPML consolidated MDL 2244 on May 23, 2011, several plaintiffs requested that the centralized proceedings be limited to solely the metal-on-metal configuration of the DePuy Pinnacle Acetabular Cup System, while Defendants requested that all configurations of the Pinnacle Acetabular Cup

System should be included within the litigation.  The JPML opted to not limit the scope of MDL 2244, stating that the transferee judge could further refine the issues and closely scrutinize the arguments of the parties regarding the inclusion of metal-on-metal and other configurations. In fact, the Court scheduled a conference early in the litigation (April 2012) to discuss, among other issues, creating separate tracks for different configurations of the Pinnacle-brand device within the MDL.  At this conference, the Court stated that regarding the issue of various configurations, it did not feel it had enough information to make any decision and noted it did not believe that it would have enough information for some time. However, Judge Kinkeade specifically noted that he would be happy to listen to what anyone wanted to say on that issue.  Indeed, one attorney in the audience specifically asked the Court if he would be given the chance in the future to be heard on the issue of separate tracks and the Court responded affirmatively.

As it relates to Defendant Fact Sheet ("DFS") productions, the PEC and Defendants are currently operating outside the express time delays provided for in the Court's CMO #11 ("DFS Order"). *See* Doc. 848.  The DFS Order only contemplated four production groups based on the Plaintiff Profile Form service deadlines expressed in Court's CMO #10 ("PPF Order"). *See* Doc. 848, ¶ 4.  The DFS Order did not contemplate time delays for DFS production relating to Plaintiff Profile Forms ("PPFs") served in cases filed or transferred to the MDL after the date of the PPF Order -- after April 6, 2018.  In other words, the PPF Order contemplated service of PPFs after the date of the PPF Order, but the DFS Order did not contemplate the reciprocal DFS production time delays related to

6

those PPFs in cases filed or transferred to the MDL after April 6, 2018.  *Compare* Doc. 848, at ¶ 4, *with* Doc. 847, at ¶¶ 2 - 3.

Consequently, pursuant to paragraph 7 of CMO #11, the PEC and Defendants have regularly conferred, and consistently agreed to specific DFS production deadlines for plaintiffs whose cases were filed or transferred to the MDL after April 6, 2018, and subsequently served their Plaintiff Profile Forms.  Further, the PEC and Defendants have mutually agreed that MDL plaintiffs' PPF submissions and Defendants' corresponding DFS productions are suspended only as to cases that are subject to a Confidential Term Sheet with Defendants ("settling cases").  PPF submission and DFS production has continued, and will continue, for all non-settling cases.

As far as the PEC is aware, pursuant to CMO #11, DFS materials have been timely produced to all plaintiffs that are not subject to a Confidential Term Sheet with Defendants. That said, the PEC has received inquiries concerning production of DFS materials relating to certain plaintiffs and have expeditiously responded to and resolved any outstanding issues brought to the PEC's attention.  However, there has been confusion by some plaintiffs' counsel about what exactly is being produced by Defendants pursuant to CMO #11.  Per CMO #11, as it relates to Defendants' production of plaintiff-specific Complaint Files, Plaintiff Name Searches, Distributors and Sales Representatives information, Defendants are required to only provide plaintiffs with bates numbers of documents which correspond to documents produced in the Defendants' General Production.  Individual MDL plaintiffs do not have access to the General Production; the PEC's vendor, International Litigation Services (ILS),

electronically maintains the General Production and only those Plaintiff Counsel authorized by the PEC have access to same.  The PEC plans to give electronic access to the General Production to individual Plaintiff Counsel whose cases are remanded by the Court, as well as acknowledge and execute the Stipulated Protective Order of Confidentiality (Doc. 131).

In conclusion, the PEC has and will continue to comply with its Court-appointed, MDL-related obligations and will continue to assist Plaintiff Counsel.  And finally, the current MDL status is as follows:

1. There will be no further bellwether trials.

2. Remand briefing has been completed and the Court has the proposals from the parties under advisement.

3. The Special Master is auditing time and expense submissions in connection with an anticipated final common benefit assessment order from Judge Kinkeade.

4. Many of the 1,300 lawyers involved in the over 10,000 cases filed in this MDL regularly contact the PEC inquiring when they can expect rulings from the Court.  We receive rulings as they are posted on ECF.  Consequently, all counsel receive same simultaneously.

Dated:  June 13, 2019                    Respectfully submitted:

_____

W. Mark Lanier
THE LANIER LAW FIRM
10940 W. Sam Houston Pkwy N
Suite 100
(713) 659-5200
(713) 659-2204 Fax
E-mail: wml@lanierlawfirm.com

_____

Wayne Fisher
FISHER, BOYD, JOHNSON
  & HUGUENARD, LLP
2777 Allen Parkway, 14th Floor
Houston, Texas 77019
Telephone: (713) 400-4000
Fax: (713) 400-4050
Email: wfisher@fisherboyd.com
Email: justinp@fisherboyd.com

_____

Richard J. Arsenault
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court
Alexandria, Louisiana 71301
Telephone: (800) 256-1050
Fax: (318) 561-2591
E-mail: rarsenault@nbalawfirm.com

_____

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue
New York, NY 10016
Telephone: (212) 784-6402
Fax: (212) 213-5949
E-mail: jconroy@simmonsfirm.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that the foregoing instrument was filed via the Court's ECF system, and served on all parties by operation of the Court's ECF system, on June 13, 2019.

_____
Richard J. Arsenault